UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------

ALLEN PAPOUBAN,

                Plaintiff,

         vs.

RA PHARMACEUTICALS, INC., EDWARD T.
MATHERS, ROBERT HEFT, TIMOTHY R.
PEARSON, RAJEEV SHAH, AOIFE M.
BRENNAN, ALEXANDER CUMBO, and
DOUGLAS A. TRECO,

                Defendants.

------------------------------------------------------------------

Case No._____

**COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

Plaintiff Allen Papouban ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE AND SUMMARY OF THE ACTION

1.      This action is brought by Plaintiff against Ra Pharmaceuticals, Inc. ("Ra Pharma" or the "Company") and the members of Ra Pharma's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Ra Pharma will be acquired by UCB S.A. ("UCB") through Franq Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.     On October 10, 2019, Ra Pharma and UCB issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated October 9, 2019 (the "Merger Agreement") to sell Ra Pharma to UCB.  Under the terms of the Merger Agreement, each Ra Pharma stockholder will receive $48.00 in cash for each share of Ra Pharma common stock they own (the "Merger Consideration").  The Proposed Transaction is valued at approximately $2.1 billion.

3.     On November 15, 2019, Ra Pharma filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Ra Pharma stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Ra Pharma management's financial projections, relied upon by the Company's financial advisor Centerview Partners LLC ("Centerview") in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Centerview; and (iii) Company insiders' potential conflicts of interest.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     In short, unless remedied, Ra Pharma's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Ra Pharma's common stock trades on the NASDAQ Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Ra Pharma.

9.      Defendant Ra Pharma is a Delaware corporation, with its principal executive offices located at 87 Cambridgepark Drive, Cambridge, Massachusetts 02140.  The Company is a clinical-stage biopharmaceutical company focused on the field of complement biology to bring innovative and accessible therapies to patients with rare diseases.  Ra Pharma's common stock trades on the NASDAQ Global Select Market under the ticker symbol "RARX."

10.     Defendant Edward T. Mathers ("Mathers") is Chairman of the Board and has been a director of the Company since 2010.  Defendant Mathers has been a partner at New Enterprise Associates, Inc. ("New Enterprise"),[1] the Company's largest stockholder, since August 2008.

---

[1] New Enterprise, a private venture capital firm and its affiliates hold approximately 13.0% of the Company's common stock.

11.     Defendant Robert Heft ("Heft") has been a director of the Company since March 2016.

12.     Defendant Timothy R. Pearson ("Pearson") has been a director of the Company since May 2016.

13.     Defendant Rajeev Shah ("Shah") has been a director of the Company since July 2015.  Defendant Shah has been a portfolio manager and managing director at RA Capital Management, LLC ("RA Capital"),[2] the Company's second largest stockholder, since 2004.

14.     Defendant Aoife M. Brennan ("Brennan") has been a director of the Company since September 2018.

15.     Defendant Alexander Cumbo ("Cumbo") has been a director of the Company since November 2018.

16.     Defendant Douglas A. Treco ("Treco") has been President, Chief Executive Officer ("CEO") and a director of the Company since he co-founded Ra Pharma in June 2008.

17.     Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

18.     UCB is a *société anonyme* formed under the laws of Belgium with its principal executive offices located at Allée de la Recherche, 60, B-1070, Brussels, Belgium.  UCB is a global biopharmaceutical company focused on the discovery and development of innovative medicines and solutions for severe diseases of the immune system and central nervous system.

---

[2] RA Capital is an investment advisory firm and holds approximately 10.3% of the Company's common stock.

19.     Merger Sub is a Delaware corporation and an indirect wholly-owned subsidiary of UCB.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

20.     Ra Pharma is a clinical-stage biopharmaceutical company that uses its proprietary peptide chemistry platform to develop novel therapeutics for the treatment of serious diseases caused by excessive or uncontrolled activation of the complement system, a critical component of the immune system.  Known as the Extreme Diversity platform, the Company's proprietary macrocyclic peptide chemistry technology allows the Company to produce synthetic macrocyclic peptides that combine antibodies with the pharmacological properties of small molecules.

21.     Ra Pharma is developing its lead product candidate, zilucoplan, a potent, synthetic, macrocyclic peptide C5 inhibitor, formulated for self-administered subcutaneous injection for the treatment of various complement-mediated diseases, including generalized myasthenia gravis and paroxysmal nocturnal hemoglobinuria.

22.     On July 16, 2019, the Company announced an exclusive worldwide license agreement for the use of Camurus AB's proprietary FluidCrystal technology to develop, manufacture, and commercialize a long-acting formulation of zilucoplan.  Commenting on the licensing agreement, defendant Treco stated, "[t]he promising data from our pre-clinical studies conducted with Camurus, the potential for cost-effective manufacturing, and Camurus's proven late-stage regulatory experience with FluidCrystal® were compelling reasons to add the FluidCrystal® technology into our zilucoplan XR life-cycle extension program."

23.     On July 26, 2019, the Company announced the closing of an underwritten public offering of 4,600,000 shares of its common stock at a price of $32.50 per share.  Gross proceeds from the offering totaled $149.5 million.

24.     On August 7, 2019, Ra Pharma issued a press release announcing its second quarter

2019 financial results.  Defendant Treco commented on the quarter, stating:

> We expanded our neuromuscular portfolio for zilucoplan with the addition of
> immune-mediated necrotizing myopathy (IMNM), a severe, chronic, and
> debilitating autoimmune disease with limited treatment options. . . . With both the
> Phase 2 clinical trial in IMNM and the Phase 3 clinical trial in generalized
> myasthenia gravis (gMG) on track to initiate in the second half of 2019, we've
> continued to a build a foundation for leveraging the properties of a small peptide in
> tissue-based complement-mediated neurologic diseases with significant unmet
> need. With a recent follow-on offering raising gross proceeds of $149.5 million, we
> are well-positioned to build meaningful value through the advancement of this
> neurologic pipeline.
>
> [ ]This quarter was also marked by significant progress in our life-cycle extension
> program. With pre-clinical data for two zilucoplan extended release (XR)
> formulations supporting the potential for once-weekly or less frequent dosing, the
> XR program is on track to enter the clinic in the first half of 2020, an opportunity
> to further advance our mission of developing and expanding patient access to
> convenient treatment options.

25.     On October 2, 2019, the Company announced the initiation of dosing in the RAISE

study, its global, pivotal Phase 3 clinical trial evaluation zilucoplan for the treatment of generalized

myasthenia gravis.  Commenting on the recent and future success of zilucoplan, defendant Treco

stated:

> We're pleased to have dosed the first patient in the RAISE study, a critical
> milestone in our mission to expand patient access to convenient complement
> inhibition. With feedback from the U.S. Food and Drug Administration (FDA), the
> European Medicines Agency (EMA), and Japan's Pharmaceuticals and Medical
> Devices Agency (PMDA) incorporated into the global Phase 3 trial design, we look
> forward to advancing zilucoplan through late-stage clinical development in gMG. .
> . . With additional indications, including immune-mediated necrotizing myopathy
> (IMNM) and amyotrophic lateral sclerosis (ALS) recently added to the pipeline, we
> believe zilucoplan, if successfully developed and approved in these indications, has
> the potential to support the creation of a leading complement-focused neurology
> franchise.

**The Proposed Transaction**

26.     On October 10, 2019, Ra Pharma and UCB issued a joint press release announcing

the Proposed Transaction.  The press release states, in relevant part:

BRUSSELS & CAMBRIDGE, Mass.--(BUSINESS WIRE)--regulated information – inside information – UCB and Ra Pharmaceuticals Inc. (NASDAQ: RARX, Ra Pharma) announced today their entry into a merger agreement pursuant for which UCB will acquire Ra Pharma. Under the terms of the agreement, Ra Pharma shareholders will receive US$ 48 in cash for each Ra Pharma share at closing. The Boards of Directors of both companies have unanimously approved the transaction, which remains subject to approval by Ra Pharma shareholders and to obtaining antitrust clearance and other customary closing conditions.

Ra Pharma is a clinical-stage biopharmaceutical company leveraging a proprietary peptide chemistry platform to develop novel therapeutics for the treatment of serious diseases caused by excessive or uncontrolled activation of the complement system, a critical component of the innate immune system. The company was founded in 2008 and is headquartered in Cambridge, MA, U.S. The company's ExtremeDiversity™ platform enables the production of synthetic macrocyclic peptides combining the diversity and specificity of antibodies with the pharmacological properties of small molecules.

Ra Pharma's phase 3 product candidate, zilucoplan, is a once-daily self-administered, subcutaneous peptide inhibitor of C5. In December 2018, Ra Pharma announced positive top-line results from a phase 2 trial of zilucoplan in patients with generalized myasthenia gravis (gMG), achieving clinically meaningful and statistically significant reductions in both primary and key secondary endpoints. Zilucoplan is currently being tested in phase 3 for the treatment of gMG with top-line results expected in early 2021. Further indications that are potentially addressable by zilucoplan include immune-mediated necrotizing myopathy (IMNM), amyotrophic lateral sclerosis (ALS) and other tissue-based complement-mediated disorders with high unmet medical need. Ra Pharma is also developing an extended release formulation of zilucoplan, as well as a potential first-in-class oral small molecule C5 inhibitor.

Jean-Christophe Tellier, CEO UCB said: "Ra Pharma is an excellent strategic fit addressing multiple areas of UCB's patient value growth strategy. Upon closing, the acquisition will add to our strong internal growth opportunities – six potential product launches in the next five years, strengthening our neurology and immunology franchises with late and early-state pipeline projects. In addition, the combination will provide us with the opportunity to become a leader in treating people living with myasthenia gravis, an auto-antibody mediated neurological orphan disease with high unmet medical need, as well as adding a highly productive technology platform to our innovation engine."

* * *

**Transaction Terms, Approvals and Timing to Close**

Upon closing, Ra Pharma shareholders will receive US$48.00 for each Ra Pharma share (approximately US$2.5bn/€2.2bn), which represents a transaction value of approximately US$ 2.1 billion / €2.0 billion, net of Ra Pharma cash. The cash consideration represents an approximately 93% premium to Ra Pharma shareholders based on the 30-day volume weighted average closing stock price of Ra Pharma prior to signing. The transaction has been unanimously approved by the Boards of Directors of both, UCB and Ra Pharma and remains subject to approval by Ra Pharma shareholders, obtaining anti-trust clearance and other customary closing conditions. UCB and Ra Pharma expect to complete the transaction by the end of Q1 2020.

**Funding**

The acquisition of Ra Pharma will be financed by a combination of existing cash resources and new bank term loans, arranged and underwritten by BNP Paribas Fortis and Bank of America Merrill Lynch. Pro-forma for this acquisition, UCB's new net debt / rEBITDA ratio would be in the range between 1.5 and 2.0 times with rapid de-leveraging expected allowing UCB to maintain significant balance sheet flexibility.

**Financial Guidance**

This acquisition will not impact UCB's 2019 financial guidance. The acquisition would be dilutive to UCB's mid-term earnings level due to R&D investments. As a result, the mid-term target of UCB reaching a rEBITDA ratio (to revenue) of 31% would move to 2022 from 2021 as previously guided. The acquisition is expected to be core EPS accretive from 2024 onwards and would enable accelerated top and bottom line growth for UCB from 2024 onwards

**<u>Insiders' Interests in the Proposed Transaction</u>**

27.     Ra Pharma insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Ra Pharma.

28.     Notably, Ra Pharma insiders stand to reap substantial financial benefits for securing the deal with UCB.  Pursuant to the Merger Agreement, all outstanding Company stock options and restricted stock units ("RSU") will vest and convert into the right to receive cash payments. The following table summarizes the value of the vested and unvested Company stock options and

RSUs that Company insiders stand to receive:

| Name | Vested Stock Options (#) | Value of Vested Stock Options ($) (1) | Unvested Stock Options (#) | Value of Unvested Stock Options ($) (1) | Unvested RSUs (#) | Value of Unvested RSUs ($) (2) | Total Value of Outstanding Stock Options and Unvested RSUs ($) (3) |
|---|---|---|---|---|---|---|---|
| **_Non-Employee Directors (4)_** | | | | | | | |
| Aoife M. Brennan, M.B., B.Ch. | 8,333 | $ 263,656 | 31,667 | $ 949,144 | — | $ — | $ 1,212,800 |
| Alexander "Bo" Cumbo | — | $ — | 40,000 | $ 1,297,050 | — | $ — | $ 1,297,050 |
| Robert Heft, Ph.D. | 52,857 | $ 1,987,486 | 15,000 | $ 421,800 | — | $ — | $ 2,409,286 |
| Edward T. Mathers | 30,000 | $ 955,950 | 15,000 | $ 421,800 | — | $ — | $ 1,377,750 |
| Timothy R. Pearson | 52,857 | $ 1,987,486 | 15,000 | $ 421,800 | — | $ — | $ 2,409,286 |
| Rajeev Shah | 30,000 | $ 955,950 | 15,000 | $ 421,800 | — | $ — | $ 1,377,750 |
| | | | | | | | |
| **_Executive Officers_** | | | | | | | |
| Douglas A. Treco, Ph.D. (5) | 762,706 | $ 30,634,723 | 443,410 | $ 14,054,614 | 41,666 | $ 1,999,968 | 46,689,305 |
| David C. Lubner (6) | 341,613 | $ 13,716,177 | 202,813 | $ 6,536,605 | 20,833 | $ 999,984 | 21,252,766 |
| Ramin Farzaneh-Far, M.D. | 219,067 | $ 8,174,008 | 204,172 | $ 6,621,401 | 20,833 | $ 999,984 | 15,795,393 |
| Simon Read, Ph.D. | 185,319 | $ 7,199,369 | 162,037 | $ 5,293,873 | 18,333 | $ 879,984 | 13,373,226 |
| John C. King | 91,312 | $ 3,519,924 | 205,688 | $ 7,311,076 | 30,658 | $ 1,471,584 | 12,302,584 |
| Alonso Ricardo, Ph.D. | 143,568 | $ 5,434,146 | 128,252 | $ 3,869,907 | 8,750 | $ 420,000 | 9,724,053 |

29.    Further, according to the Proxy Statement, the Board will approve the payment of transaction bonuses to "certain key individuals, including certain executive officers," totaling up to $5.4 million in the aggregate.  *See* Proxy Statement at 61.

30.    Moreover, if they are terminated in connection with the Proposed Transaction, Ra Pharma's named executive officers stand to receive substantial cash severance payments. According to the Proxy Statement:

> [I]t is currently estimated that Ra Pharma executive officers would be entitled to receive, in the aggregate, approximately $4.2 million in severance benefits under the employment agreements described above (which amount does not include the value of any accelerated vesting of equity awards because those awards will become vested upon closing of the Merger under the Merger Agreement).

*Id.*

**The Proxy Statement Contains Material Misstatements or Omissions**

31.    The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Ra Pharma's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

32.    Specifically, as set forth below, the Proxy Statement fails to provide Company

stockholders with material information or provides them with materially misleading information concerning: (i) Ra Pharma management's financial projections, relied upon by the Company's financial advisor Centerview in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Centerview; and (iii) Company insiders' potential conflicts of interest.

***Material Omissions Concerning Ra Pharma's Financial Projections***

33.     The Proxy Statement omits material information regarding the Company's financial projections provided by Ra Pharma's management and relied upon by Centerview for its analyses.

34.     For example, the Proxy Statement sets forth:

> The Ra Pharma Management Projections were created by Ra Pharma management based on their assumptions about Ra Pharma's business, including with respect to zilucoplan and Ra Pharma's platform, and programs for an extended release (which is referred to as "XR") zilucoplan formulation and oral complement component C5 inhibition (both currently in preclinical development) and for royalties and milestones expected from Ra Pharma's collaboration with Merck & Co., Inc. (d.b.a. Merck Sharp & Dohme Corp. outside the United States and Canada) on the development and commercialization of a macrocyclic peptide candidate for the treatment of an undisclosed cardiovascular indication (commenced Phase 1 activities), **and risk-adjusted these projections with respect to these product candidates.  The Ra Pharma Management Projections were based on certain internal assumptions about the probability of success through approval, epidemiology, pricing, sales ramp, market growth, market share, competition, timing for clinical trial completion, commercial launch and patent expiry, as well as estimated tax assets and rates, changes in net working capital, capital expenditures, depreciation and amortization**.

*Id.* at 57 (emphasis added).  The Proxy Statement fails, however, to disclose the details of the risk adjustments to the projections and further fails to quantify the assumptions underlying Ra Pharma management's projections, including the probability of success through approval, epidemiology, pricing, sales ramp, market growth, market share, competition, timing for clinical trial completion, commercial launch and patent expiry.  Additionally, the Proxy Statement fails to disclose the un-

risked projections so Ra Pharma stockholders can evaluate the financial impact the Company's risk-adjustments had on the projections.

35.     The omission of this information renders the statements in the "Ra Pharma Management Projections" and "Summary of Centerview Financial Analysis" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Centerview's Financial Analyses***

36.     The Proxy Statement describes Centerview's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of Centerview's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Ra Pharma's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Centerview's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

37.     With respect to Centerview's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the implied terminal value of the Company; (ii) quantification of the inputs and assumptions underlying the discount rate range of 11.0% to 13.0%; (iii) the basis for assuming unlevered free cash flows would decline in perpetuity after December 31, 2036 at a rate of free cash flow decline year-over-year of 80.0%; (iv) the tax savings from usage of federal net operating losses and future losses utilized by Centerview in the analysis; (v) quantification of the estimated costs associated with an assumed $500 million capital raise in 2021; and (vi) Ra Pharma's estimated net cash balance as of December 31, 2019.

38.     With respect to Centerview's analysis of stock price targets, the Proxy Statement fails to disclose the individual price targets for the Company.

39.     With respect to Centerview's analysis of premiums paid in the selected transactions observed in the *Selected Precedent Transaction Analysis*, the Proxy Statement fails to disclose the premiums paid in each of the transactions.

40.     The omission of this information renders the statements in the "Summary of Centerview Financial Analysis" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

41.     The Proxy Statement fails to disclose material information concerning the conflicts of interest faced by Ra Pharma insiders.

42.     For example, the Proxy Statement sets forth:

> As of the date of this proxy statement, none of Ra Pharma's executive officers has entered into any agreement, arrangement or understanding with UCB or any of its executive officers, directors or affiliates regarding employment with UCB or any of its affiliates.  Although no such agreement, arrangement or understanding exists as of the date of this proxy statement, certain of Ra Pharma's executive officers may, prior to the completion of the Merger, enter into new arrangements with UCB or its affiliates regarding employment with UCB or certain of its affiliates.

*Id.* at 61.  Yet, the Proxy Statement fails to disclose the details of any employment and retention-related discussions and negotiations that occurred between UCB and Ra Pharma executive officers, including who participated in all such communications, when they occurred and their content.  The Proxy Statement further fails to disclose whether any of UCB's prior proposals or indications of interest mentioned management retention or equity participation in the combined company.

43.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that

would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

44.     The omission of this information renders the statements in the "Background of the Merger" and "Interests of the Directors and Executive Officers of Ra Pharma in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

45.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Ra Pharma stockholders will be unable to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

46.     Plaintiff repeats all previous allegations as if set forth in full.

47.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

48.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented

and/or omitted material facts, including material information about the Company's financial projections, the financial analyses performed by the Company's financial advisor, and potential conflicts of interest faced by Company insiders. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

49.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

50.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

51.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of
### Section 20(a) of the Exchange Act

52.     Plaintiff repeats all previous allegations as if set forth in full.

53.     The Individual Defendants acted as controlling persons of Ra Pharma within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Ra Pharma, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

54.     Each of the Individual Defendants was provided with or had unlimited access to

copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

56.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

57.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Ra Pharma's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief,

including injunctive relief, in his favor on behalf of Ra Pharma, and against defendants, as follows:

A.   Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Ra Pharma stockholders;

B.   In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.   Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.   Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.   Granting such other and further relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  November 21, 2019

**WEISSLAW LLP**

By _____

Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*

- 16 -